

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FRANK BRUNCKHORST CO., L.L.C.,

    Plaintiff,

v.

COASTAL ATLANTIC, INC.,

    Defendant.

COASTAL ATLANTIC, INC.,

    Counterclaim Plaintiff,

v.

FRANK BRUNCKHORST CO., L.L.C.,

and

BOAR'S HEAD PROVISIONS CO., INC.,

    Counterclaim Defendants.

Civil Action No. 2:07cv314

## ORDER AND OPINION

  Pending before the court are motions to dismiss filed by the counterclaim defendants,

Frank Brunckhorst, Co., L.L.C. (hereinafter "Brunckhorst") and Boar's Head Provisions Co., Inc.

(hereinafter "Boar's Head"). The counterclaim defendants seek dismissal of the Amended

Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). After examination of the

briefs and record, this court determines oral argument is unnecessary because the facts and legal

arguments are adequately presented, and the decisional process would not be significantly aided

by oral argument.  The court, for the reasons set out fully herein, **GRANTS** Brunckhorst's and Boar's Head's motions to dismiss.

I. Factual Background

Brunckhorst is the national distributor of Boar's Head Brand deli products, and sells those products to independent distributors across the country.  The defendant and counterclaim plaintiff Coastal Atlantic, Inc. (hereinafter "Coastal") is a former distributor of Boar's Head products, which would purchase the products from Brunckhorst and resell them to supermarkets and delicatessens.[1]  Although Brunckhorst and Coastal had a distributorship arrangement for more than twenty years, they never entered into a written distribution agreement, nor did they have any agreement of a definite duration.  Instead, they had an at-will relationship, in which Coastal was permitted at any time to cease purchasing Boar's Head products from Brunckhorst, and Brunckhorst was likewise free to stop selling products to Coastal for any or no reason.  Geri Meyers is Coastal's sole shareholder.  Richard Meyers is the husband of Geri Meyers, and is Coastal's corporate secretary and treasurer.  Coastal Real Estate, L.L.C., is a separate entity owned by Geri and Richard Meyers which operates a warehouse in which Coastal and other businesses owned by the Meyerses lease space.[2]

On or about June 29, 2007, citing problems relating to product integrity, Brunckhorst

_____

[1]In 1984, Coastal entered into an arrangement with Brunckhorst, which authorized Coastal to distribute Boars' Head products in the Tidewater and Richmond areas of Virginia.

[2]Although denominated on some of the pleadings as such, the court notes that the Meyerses and Coastal Real Estate have not been properly joined as counterclaim plaintiffs, either pursuant to Rule 13(h) or Rule 24 of the Federal Rules of Civil Procedure.  However, as noted infra and because this order dismisses the Amended Counterclaim, the court finds the motion to join the Meyerses and Coastal Real Estate to be moot.

ceased all shipments of Boar's Head products to Coastal. After negotiations between Brunckhorst and the Meyerses in an effort to salvage the distribution relationship broke down, Coastal began distributing Thumann's brand deli meats and cheeses.

II. Procedural History

On July 10, 2007, Brunckhorst filed the instant complaint against Coastal in this court, alleging trademark infringement and violations of the Lanham Act as well as a claim for recovery of over $400,000 worth of deli products that had allegedly been delivered to Coastal but for which Brunckhorst was never paid. Coastal filed a counterclaim and then an amended counterclaim, alleging actual and constructive fraud, tortious interference with contract and with business expectancy, business conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[3] On September 24, 2007, Brunckhorst filed the instant motion to dismiss the amended counterclaim. Coastal filed a response brief on October 15, 2007, and Brunckhorst filed a reply brief on October 25, 2007.

Likewise, Boar's Head filed a separate motion to dismiss on September 24, 2007, to which Coastal responded on October 15, 2007. Boar's Head filed a reply brief on October 25, 2007. The court notes that the Amended Counterclaim fails to allege any claims against Boar's

---

[3]Coastal filed the Amended Counterclaim along with the Meyerses and Coastal Real Estate, against both Brunckhorst and Boar's Head. Brunckhorst has filed a motion to drop the Meyerses and Coastal Real Estate as improperly joined, and those parties have filed a motion to be added as counterclaim plaintiffs. It appears to the court that the Meyerses and Coastal Real Estate are not proper parties to the lawsuit, because they each lack standing to assert claims against Brunckhorst and Boar's Head. However, the dismissal of the Amended Counterclaim obviates the need to formally rule on the proposed joinder of the Meyerses and Coastal Real Estate to the instant litigation, and therefore the court finds the motions concerning joinder to be moot.

Head, and that Brunckhorst and Boar's Head are legally distinct entities.[4] Further, the briefs filed in support and in opposition to the motions to dismiss seem to conflate Boar's Head and Brunckhorst, leading to the briefs that are related to Boar's Head's motion to dismiss serving, essentially, as page-limit extensions to the briefs on Brunckhorst's motion to dismiss. The court notes that this enlargement would appear to be in violation of a strict reading of Rule 7(F) of the Local Rules of the United District Court for the Eastern District of Virginia. However, considering that neither party appears to have gained a clear advantage from incorporating briefs by reference, the court notes that it has considered all of the arguments set forth by the parties. Accordingly, the motions to dismiss are ripe for consideration.

III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits the defendant to request dismissal if the plaintiff has filed a claim upon which relief cannot be granted. FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss for failure to state a claim upon which relief can be granted, "a count should be dismissed only where it appears beyond a reasonable doubt that recovery would be impossible under any set of facts which could be proven." America Online, Inc. v. GreatDeals.Net, 49 F. Supp. 2d 851, 854 (E.D. Va. 1999). The court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Markets, Inc. v. J.D. Associates Ltd., 213 F.3d 175,

---

[4]The Amended Counterclaim makes plain Coastal's position that Brunckhorst and Boar's Head are indistinguishable entities. However, even assuming this to be true, the allegations of the Amended Counterclaim are made against Brunckhorst, and there are no claims that relate directly to Boar's Head but not Brunckhorst. Further, the confusion as to whether Boar's Head is a proper party to the case is immaterial to the resolution of the motions to dismiss. For purposes of this order, the court will refer to Brunckhorst and Boar's Head collectively as "Brunckhorst."

180 (4th Cir. 2000) (citations omitted).

While the court must take the facts in the light most favorable to the plaintiff, the court is not bound with respect to the complaint's legal conclusions. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). Dismissal pursuant to Rule 12(b)(6) is appropriate when upon considering the facts set forth in the complaint as true and construing the facts in the light most favorable to the non-moving party, there is no basis on which relief can be granted. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Dismissal should not be granted unless the moving party can demonstrate that no set of allegations will support the complaint. Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083 (4th Cir. 1979).

IV. Analysis

A. Breach of Contract

To state a valid claim for breach of contract under Virginia law, a plaintiff must claim that the defendant owed it a legal obligation, the defendant violated that obligation, and, as a consequence, injury or damage inured to the plaintiff. See, e.g., Caudill v. Wise Rambler, Inc., 210 Va. 11, 13 (1969). Virginia courts have repeatedly held that, where a distributorship arrangement has no definite duration, it is "at will" and may be terminated by either party at any time, with or without cause. See, e.g., Stutzman v. C.A. Nash & Son, Inc., 189 Va. 438, 446 (1949) (holding that, where a contract to distribute floor cleaner contained no provision as to duration, either party was at liberty to terminate the contract at will).

Count VI of the Amended Counterclaim alleges that Brunckhorst breached the oral distribution agreement it had with Coastal by terminating Coastal's distributorship rights after

5

having assured Coastal that it would continue with the relationship as long as Coastal complied

with certain requirements.  Coastal specifically claims that, more than twenty-three years ago,

Richard Meyers had a conversation with a Brunckhorst employee who told him that as long as

the Meyerses "(1) promoted the Boar's Head brand and, (2) built brand identification, they would

have the exclusive right to distribute Boar's Head products in the Tidewater, Virginia area."

Amended Counterclaim at ¶ 13.  Coastal therefore argues that this statement provides an "agreed-

upon" duration for the contract between it and Brunckhorst, to wit: for as long as Coastal

satisfied the conditions.

     In support of this contention, Coastal cites the case of <u>Alpha Distrib. Co. v. Jack Daniel</u>

<u>Distillery</u>, 454 F.2d 442 (9th Cir. 1972), in which the Ninth Circuit, citing <u>Burgermeister</u>

<u>Brewing Corp. v. Bowman</u>, 38 Cal. Rptr. 597 (Cal. Ct. App. 1964), indicated that "where parties

expressly agree that the exclusive distributorship shall continue while the distributor exercises his

best efforts, the contract is terminable only for cause."  <u>Alpha Distrib.</u>, 454 F.2d at 448.

However, the <u>Alpha Distrib.</u> court held that the oral contract between the parties was terminable

at will where the supplier had indicated the relationship would last "as long as [the distributor]

performed its undertakings."  <u>Id.</u> at 447.  Even further, to the extent that California law

transforms an at-will relationship into one that can be terminated only for cause if one party

agrees to use its best efforts to promote a brand, this is contrary to the law of Virginia, which

governs this case.  <u>See, e.g.</u>, <u>Stutzman</u>, 189 Va. at 446; <u>Stonega Coke & Coal Co. v. Lousville &</u>

<u>Nashville R.R. Co.</u>, 106 Va. 223, 226 (1906).

     Coastal cites no decision from a court interpreting Virginia law that would support the

application of the <u>Burgermeister</u> ruling to this case.  In <u>Addison v. Amalgamated Clothing &</u>

6

Textile Workers Union of Am., 236 Va. 233 (1988), the Supreme Court of Virginia held that the promise of employment to an individual for "as long as he wanted one and as long as one existed" was sufficient only to create an at-will relationship of employment. Id. at 235. Coastal claims that, in dicta, the court left open the possibility that the at-will status might be refuted "where the contract expressly assured job security so long as performance was satisfactory." Id. at 235-36. Yet in actuality, the court was merely indicating that, in its review of applicable case law from other jurisdictions, it found only two that supported such a theory. See Maloney v. E.I. Du Pont de Nemours & Co., 352 F.2d 936, 938 (D.C. Cir. 1965); Touissant v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 610 (1980). The Addison court, noting that it had rejected this line of reasoning, then indicated that, even were it to apply the rationale of Maloney and Touissant, the facts before it demonstrated no assurance relating to satisfactory performance. Addison, 236 Va. at 236.

Further damaging to Coastal's case is the fact that, were the court to find that the agreement with Brunckhorst included a just-cause provision, its enforcement would be barred by the Statute of Frauds, which requires a writing if the contract cannot be performed within one year. See Windsor v. Aegis Servs., Ltd., 691 F.Supp. 956, 959 (E.D. Va. 1988), aff'd, 869 F.2d 796 (4th Cir. 1989) (holding that, under Virginia law, "enforcement of [an] alleged oral 'just-cause' . . . contract is barred by the Statute of Frauds because it cannot be performed within a year"). Although Coastal claims that the contract could be performed within a year, the Windsor court and other courts applying Virginia law have noted the distinction between termination and completed performance. Id. See also Silverman v. Bernot, 218 Va. 650, 655 (1977). Should the court find that the contract only permitted termination for cause, then a writing would be required

7

to comply with Virginia's Statute of Frauds. See, e.g., Seddon v. Rosenbaum, 85 Va. 928, 931-33 (1889). Because the contract at issue was never memorialized in a writing, Coastal would be unable to rely on it in an action for breach against Brunckhorst.

Coastal argues that three Fourth Circuit cases applying Virginia law stand for the proposition that, where a distributor contracts with a supplier for an exclusive distributorship, the agreement is no longer terminable at will. See Melchiorre v. California Canners & Growers, 394 F.2d 413 (4th Cir. 1968); Allied Equip. Co. v. Weber Eng'red Prods., Inc., 237 F.2d 879 (4th Cir. 1956); Jack's Cookie Co. v. Brooks, 227 F.2d 935 (4th Cir. 1955). However, these cases are all either readily distinguishable or inapposite. In Melchiorre, the parties and the court agreed that the distribution agreement between them was at will, but disputed whether there was an enforceable contract in the first place, and, if so, whether the supplier was required to give the distributor notice in advance of termination. Melchiorre, 394 F.2d at 415. Thus, Melchiorre does not address the issue at hand, and there is no allegation that Brunckhorst did not give reasonable notice to Coastal before terminating the agreement.

In both Allied and Jack's Cookie, the Fourth Circuit held that, under the circumstances before it, a fact issue existed as to whether a supplier had committed to supplying products to a distributor for a reasonable period of time in order to permit the distributor to recoup the expenses of setting up the distribution network. Allied, 237 F.2d at 882; Jack's Cookie, 227 F.2d at 937. However, in Allied, the supplier, Weber, had granted to Allied, the distributor, the exclusive right of distribution in a certain geographic region. Over the course of expanding its operations, Allied was negotiating a fifteen-year lease, but "[t]he lessor desired some assurances as to the duration of Allied's franchises." Allied, 237 F.2d at 880. Allied secured a letter from

Weber in which Weber indicated its hope that the two would "have the pleasure of many more years of pleasant, profitable association." Id. at 881. Upon receipt of the letter, the lessor agreed to the fifteen-year lease. When, one year later, Weber terminated the relationship, the Fourth Circuit held that, on the circumstances before it, a factual issue arose as to whether Weber had committed to Allied for a reasonable period of time. Id. at 882.

Likewise, in Jack's Cookie, a distributor began his duties under a distribution agreement on January 1, 1952, and the agreement was terminated on September 1, 1953. Jack's Cookie, 227 F.2d at 937. The Fourth Circuit held that a jury issue existed as to whether the supplier had retained the agent in his employment for a reasonable amount of time. Id. at 938-39. In contrast, the factual allegations of the amended counterclaim indicate that Coastal and Brunckhorst had a distribution relationship for more than twenty-three years. This period of time is more than sufficient for Coastal to have recouped its investment, and indeed, the amended counterclaim makes no contention to the contrary. Accordingly, the facts of this case fall outside those contemplated in Allied and Jack's Cookie, in that Coastal was given more than a reasonable amount of time to operate its distributorship before the at-will relationship was terminated by Brunckhorst.

Coastal finally claims that Coastal Real Estate may bring an action for breach of contract as a third-party beneficiary of the agreement between Coastal and Brunckhorst, because Coastal Real Estate, in reliance on that agreement, has begun building a new distribution facility. However, this court has held consistently that "only intended beneficiaries of a contract may enforce against the promisor a duty or right under the contract." Maersk Line Ltd. v. CARE, 271 F.Supp.2d 818, 825 (E.D. Va. 2003) (citing Restatement (Second) of Contracts, § 302 (1981)).

9

Because Coastal Real Estate did not exist when Coastal and Brunckhorst entered into the distribution relationship, it clearly could not have been contemplated as a beneficiary of the contract agreed to by Coastal and Brunckhorst. As the court in Maersk Line held, the argument proffered by Coastal

> would create almost limitless third-party beneficiaries in commercial situations, because any party standing to profit from the performance of another contract could claim intended beneficiary status and move to enforce that contract against the promisor. The purpose of the test as stated in the Restatement is to assure that only a party whose benefit was contemplated, and therefore intended, at the time of the contract can assert intended third-party beneficiary status.

Id. Accordingly, Coastal Real Estate lacks standing as a third-party beneficiary to enforce the terms of the contract between Coastal and Brunckhorst. Because Coastal cannot demonstrate that the contract in question was anything other than terminable at will, it is not entitled to recover on a claim for breach of contract.

B. Fraud

To properly state a claim for actual fraud under Virginia law, a plaintiff needs to demonstrate: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Winn v. Aleda Constr. Co., 227 Va. 304, 308 (1984). Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud claims be pled with heightened specificity. As the Fourth Circuit has indicated, the factors of a fraud claim that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Count I of the Amended Counterclaim alleges that Brunckhorst made various fraudulent representations and concealments that resulted in damage to Coastal as a result of its reliance upon them.  With one exception, these allegations relate to events that occurred after the formation of the distribution agreement between Brunckhorst and Coastal.[5]  Brunckhorst argues that Coastal's allegations of fraud should be dismissed because Coastal has failed to allege actionable fraud.[6]  Specifically, Brunckhorst argues that, in accordance with <u>Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.</u>, 256 Va. 553 (1998), Coastal's claims relate to the contract, and thus do not sound in tort.  In <u>Richmond Metro.</u>, the Virginia Supreme Court indicated that, "[i]n determining whether a cause of action sounds in contract or in tort, the source of the duty violated must be ascertained." <u>Id.</u> at 558.  Where the duty that gives rise to the alleged misrepresentation is one that is required by contract, there can be no recovery in tort. <u>Id.</u> at 559.  Because the alleged statements and concealments of Brunckhorst occurred–with one exception–after it had entered into the contract with Coastal, that contract governs the duties between the two parties.  As indicated <u>supra</u>, the contract provided Brunckhorst with the absolute right to terminate it at will, and therefore, the contract was not breached when Brunckhorst

_____

[5]The exception is the allegation that, prior to the contract formation, a representative of Brunckhorst indicated to Coastal that the distributorship relationship would endure as long as Coastal promoted the Boar's Head brand.

[6]Brunckhorst also claims that Coastal has failed to plead its claim for fraud with the kind of heightened specificity required by Federal Rule of Civil Procedure 9(b).  <u>See also</u> <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (noting that the factors of a fraud claim that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").  Because the court finds that the allegations are legally insufficient to support a claim for fraud, it declines to reach the question of whether they were pleaded with the requisite particularity.

11

stopped supplying Boar's Head products to Coastal. Yet even were the court to find that the

contract permitted only termination for cause, Coastal's allegations of fraud would continue to

arise out of a duty that is rooted in contract, and the proper vehicle for recovery would be an

action for its breach.

Further, although Coastal alleges several instances of fraud as a result of Brunckhorst's

concealment of certain actions that it was taking[7] in an effort to take over Coastal' distribution

network, Coastal fails to identify the source of any duty that Brunckhorst had to disclose its

activities or motives to Coastal. While concealment of a material fact may, under Virginia law,

constitute misrepresentation, it is only actionable as fraud if there existed some duty on the part

of the party concealing to disclose the facts to the plaintiff. See, e.g., Sabet v. E. Va. Med. Auth.,

775 F.2d 1266 (4th Cir. 1985). Because there existed no such duty, contractual or otherwise, on

the part of Brunckhorst to disclose its actions to Coastal, these claims are insufficient as a matter

of law to support a claim for fraud.

Similarly, although Coastal alleges that it was promised by Brunckhorst that, if Richard

Meyers attended training on product integrity and the Meyerses relinquished control of Coastal to

their son, Coastal would be able to keep the distributorship, Coastal does not allege–and cannot

prove–that it acted on this promise. In fact, the facts remain undisputed that Richard Meyers

never attended any training, and the Meyerses never agreed to relinquish control of Coastal to

their son. Accordingly, even were Coastal able to demonstrate that Brunckhorst had indeed made

---

[7]Specifically, Coastal claims that Brunckhorst concealed that it was positioning to take over Coastal's distributorship even while the Meyerses and Coastal Real Estate were investing in a new distribution center and that it was working with other distributors and with the Meyerses' son in order to take over Coastal's business. Amended Counterclaim, ¶¶ 130.

this promise with the present intent not to perform, Coastal is still unable to demonstrate reliance, one of the essential elements of a fraud claim in Virginia. <u>See, e.g.</u>, <u>Winn v. Aleda Constr. Co.</u>, 227 Va. 304, 308 (1984).

With respect to the sole allegation of misrepresentation that precedes the formation of the contract, Coastal claims that a Brunckhorst representative assured Richard Meyers that it would continue their relationship as long as Coastal properly promoted the brand.[8] This statement allegedly induced Coastal into entering into the distribution agreement with Brunckhorst. However, a claim for fraud in the inducement requires that the misrepresentation be false at the time it was made. The court in <u>Richmond Metro.</u> noted this distinction in dismissing a fraud claim that was based on statements made after a contract had been entered into. <u>Richmond Metro.</u>, 256 Va. at 560. "This conclusion is consistent with the distinction in Virginia law between a statement that is false when made (which is fraud) and a promise that becomes false only when the promisor later fails to keep his word (which is breach of contract)." <u>Hitachi Credit America Corp. v. Signet Bank</u>, 166 F.3d 614, 631 n.9 (4th Cir. 1999). To hold, as Coastal asks this court to do, that in the early 1980s Brunckhorst deliberately misled Coastal into agreeing to a contract, but then waited some twenty-three years before ceasing to uphold its end of the bargain would stretch beyond all boundaries the requirement of causation. <u>See</u> <u>Yuzefovsky v. St. John's Woods Apartments</u>, 261 Va. 97, 111 (2001) (holding that damages that arose more than a year and a half after the alleged fraud "are too remote to give rise to liability"). This the court is unwilling to do, and thus, it must conclude that Coastal's claims of fraud are not legally viable.

---

[8]In its response to Brunckhorst's motion to dismiss, Coastal now claims that Brunckhorst made such a representation in 2007. <u>See</u> Response Brief at 15. However, the amended counterclaim contains no such allegation.

C. Constructive Fraud

Virginia law recognizes a claim for constructive fraud if the following elements are shown: (1) a false representation of material fact; (2) innocently or negligently made; and (3) damage to the injured party as a result of reliance on the misrepresentation. See, e.g., Prospect Dev. Co. v. Bershader, 258 Va. 75, 85 (1999). Count II of the Amended Counterclaim alleges constructive fraud against Brunckhorst based on representations that it needed data from Coastal in order to track contaminated product, that Coastal had problems with product integrity, and that Coastal would continue to retain the distributorship rights as long as it promoted the Boar's Head brand. However, as with its claim of actual fraud, Coastal has failed to properly demonstrate that Brunckhorst owed it any duty apart from the oral contract. Although Coastal claims now that the false representations that Brunckhorst allegedly made were outside the scope of the contract, and therefore may be violative of an independent legal duty of fair dealing, it is clear that Virginia law recognizes no such independent duty.[9] Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action. See Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33 (1996) (holding that "the failure to act in good faith . . . does not amount to an independent tort" and "the breach of the implied duty . . . gives rise only

---

[9]Coastal cites, inter alia, Insteel Indus. v. Costanza Constr. Co., 276 F.Supp.2d 479 (E.D. Va. 2003), in support of its contention that a tort claim may arise from an independent legal duty unrelated to a contract. While this is a correct statement of the law in Virginia, see, e.g., Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553 (1998), Insteel involves the application of North Carolina law, and specifically an alleged violation of a North Carolina statute prohibiting unfair and deceptive business practice. Id. at 488. Accordingly, Insteel does not stand for the proposition that Virginia law recognizes a claim for a violation of the duty of good faith apart from a breach of contract claim.

to a cause of action for breach of contract"); see also L&E Corp. v. Days Inns of America, Inc., 992 F.2d 55, 59 n.2 (4th Cir. 1993) (noting that Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing).  Because Coastal cannot identify a duty owed to it by Brunckhorst independent of their contract, it cannot maintain an action for constructive fraud.[10]

D.  Tortious Interference with Contract

To state a claim for tortious interference with contract, a plaintiff must allege: (1) a valid contractual relationship; (2) knowledge of the relationship by the defendant; (3) intentional interference inducing or causing a breach of the contractual relationship; and (4) resulting damage to the relationship.  Chaves v. Johnson, 230 Va. 112, 120 (1985).  Count III of the Amended Counterclaim alleges that Brunckhorst tortiously interfered with the contracts that Coastal had with customers to whom it had formerly distributed Boar's Head products.  However, the contracts with which Coastal claims Brunckhorst interfered were admittedly at-will relationships.[11]  See Amended Counterclaim, ¶ 140 ("At all relevant times, Coastal had existing

---

[10]Curiously, Coastal argues that it has "stated more than a claim for mere negligent performance, or non-performance, of the contract, but rather an independent tort distinct from the breach of contract." Response Brief at 24.  However, this contention is made in support of Coastal's claim for constructive fraud, which, by its nature, is based on innocent or negligent conduct.  See Prospect Dev. Co. v. Bershader, 285 Va. 75, 85 (1999).  See also Va. Transformer Corp. v. P.D. George Co., 932 F.Supp. 156 (W.D. Va. 1996) (noting that a constructive fraud claim is "effectively nothing more than a claim of negligence").  Thus Coastal attempts to avoid dismissal of its constructive fraud claim by arguing that it is actually not a constructive fraud claim, but something else.  Yet Coastal is bound by its pleading, and cannot maintain an action for constructive fraud against Brunckhorst.

[11]Coastal notes that the amended counterclaim only characterizes some of its relationships with customers as at-will contracts.  From this, Coastal would have the court infer that some of its relationships were contracts that could only be terminated for cause.  Yet Coastal does not actually make this claim, either in its response brief or in the Amended Counterclaim itself.

and ongoing business relationships (including valid at-will contractual relationships) with customers of Boars' Head products in Coastal's exclusive territory.") (emphasis added).

As the Supreme Court of Virginia has held, "the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will." Duggin v. Adams, 234 Va. 221, 227 (1987). Despite Coastal's assertion that a separate cause of action exists for tortious interference with an at-will contract, it is clear that any such action would be identical with a claim for tortious interference with business expectancy. Accordingly, because the Amended Counterclaim contains such a claim, the claim for tortious interference with contract is duplicative and unnecessary.

E. Tortious Interference with Business Expectancy

Under Virginia law, a plaintiff states a proper claim for tortious interference with business expectancy by alleging: (1) a contract expectancy or prospective business relationship; (2) knowledge of the same by the defendant; (3) intentional interference with the expectancy; (4) the defendant's use of improper means to interfere with the expectancy; and (5) resulting damages to the plaintiff. Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 254 Va. 408, 414 (1997). Count IV of the Amended Counterclaim sets forth a claim for tortious interference with business expectancy, and specifically alleges that Brunckhorst knew that Coastal had a reasonable expectancy of continuing business relationships with its customers, but intentionally interfered with that expectancy by terminating the contract. The Amended Counterclaim also alleges that, after the termination of the contract with Brunckhorst, Coastal had a business

---

Rather, it simply alleges that it had "existing and ongoing business relationships (including valid at-will contractual relationships)." Accordingly, Coastal has not alleged that Brunckhorst interfered with any contracts that were not terminable at will.

expectancy to sell competitive products to its former customers, and that Brunckhorst interfered with that expectancy by "threatening" Coastal's former customers in order to prevent them from buying Thumann's brand deli products from Coastal.

In moving to dismiss, Brunckhorst argues that, because it had the right to terminate its contract with Coastal for any or no reason, it cannot be said to have interfered with any business expectancy by improper means. Because one party's choice to exercise a legal right, even if it will interfere with the plaintiff's contract interests, "is not actionable and will not support recovery for tortious interference," Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 251 Va. 28, 36 (1996), it is clear that Coastal cannot make out a proper claim based on allegations that Brunckhorst interfered with its relationships with its customers by terminating the contract. With respect to the claim that, after the relationship between Coastal and Brunckhorst had ended, Brunckhorst "threatened" certain retailers that, if they bought Thumann's products from Coastal, they would not be able to purchase Boar's Head products, this again fails to rise to the level of improper interference. Although perhaps unsavory, Brunckhorst tactics in threatening to withdraw supplies of Boar's Head products to those retailers who decided to purchase Thumann's products from Coastal were within its legal rights. As Brunckhorst points out, this is the essence of competition in a free market society.

The Virginia Supreme Court has explained that "[m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. . . . Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct." Duggin, 234 Va. at 227-28 (internal citations omitted). Apart from Coastal's conclusory allegation in

17

responding to the dismissal motion that Brunckhorst's actions constituted tortious interference, the Amended Counterclaim is devoid of any reference to "illegal or independently tortious" means or methods that "violate an established standard of a trade or profession, or involve unethical conduct." Id. Rather, the best that can be said of Brunckhorst's conduct from the allegations in the Amended Counterclaim is that it was offering the choice to retailers between purchasing Thumann's products from Coastal and purchasing Boar's Head products from Brunckhorst. Such action fails to rise to the level of "improper means" required to state a valid claim for tortious interference with business expectancy or with an at-will contract. Accordingly, this claim cannot withstand dismissal under Rule 12(b)(6).

F.  Business Conspiracy

Virginia law provides a statutory claim for business conspiracy where "any two or more persons . . . combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." Va. Code Ann. §§ 18.2-499, 500. A properly stated claim includes the allegation "that the defendants combined together to effect a preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Bay Tobacco, L.L.C. v. Bell Quality Prods., L.L.C., 261 F.Supp.2d 483, 499 (E.D. Va. 2003) (internal citation and quotation omitted).   Count V of the Amended Counterclaim alleges that Brunckhorst conspired with others to injure Coastal's reputation, trade and business and to take over its business territory. Brunckhorst argues, in moving for dismissal, that, because the termination of the at-will relationship with Coastal was lawful, there can be no valid claim for conspiracy. Indeed, Virginia courts have repeatedly held that "there can be no conspiracy to do an act the law

18

allows." Hechler Chevrolet v. General Motors Corp., 230 Va. 396, 402 (1985).

Where, as here, the defendant had the right to terminate the at-will relationship with the plaintiff, any claim for business conspiracy must fail as a matter of law. See Bay Tobacco, 261 F.Supp.2d at 498 (holding that, because a manufacturer had the right to terminate an at-will relationship, the conspiracy claim was insufficient as a matter of law). For the reasons indicated supra, the court has found that the agreement between Coastal and Brunckhorst was at will. Accordingly Coastal's claim of business conspiracy, which is based on the contention that the agreement could only be terminated for cause, must be dismissed.

G.  Implied Covenant of Good Faith and Fair Dealing

As noted supra, although Virginia law implies a covenant of good faith and fair dealing in every contract, it provides that the breach of such duties gives rise to an action for breach of contract, not a separate claim. See, e.g., Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33 (1996). Because Coastal's claim for breach of contract is legally insufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6), Coastal cannot make a valid claim for the breach of an implied covenant contained in the contract. See Virginia Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 542 (4th Cir. 1998) ("[I]t is a basic principle of contract law in Virginia, as elsewhere, that although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party.") (emphasis in original). Thus, an independent claim for a breach of the implied covenant of good faith and fair dealing, such as is found in Count VII of the Amended Counterclaim, is improper and subject to dismissal.

H. Unjust Enrichment

In order to recover in quasi-contract, the plaintiff must show that: (1) it conferred a

benefit on the defendant; (2) with the reasonable expectation of payment; (3) the defendant knew

or should have known of the expectation; and (4) allowing the defendant to retain the benefit

would result in unjust enrichment. Fed. Dep. Ins. Corp. v. S.A.S. Assocs., 44 F.Supp.2d 781,

788 (E.D. Va. 1999). "[A] party may not recover for claims sounding in quasi-contract or unjust

enrichment when an express or implied contract already governs its relationship with a

defendant." Id. at 787 (citing Bright v. QSP, Inc., 20 F.3d 1300, 1306 (4th Cir. 1994)). Although

Coastal has clearly alleged, and Brunckhorst openly acknowledged, that a contract existed in this

case, Coastal now claims that it is entitled to bring a claim for unjust enrichment as an alternative

theory of the case.

However, the Amended Counterclaim makes no allegation that the parties did not have a

contractual agreement. In fact, Coastal continues to acknowledge that the parties had an express

oral contract. Accordingly, whether it is permissible to allege both a breach of contract and a

claim for unjust enrichment in the same complaint is immaterial, because Coastal has failed to

plead the alternative claim that no such contract existed between the parties. The Amended

Counterclaim incorporates by reference in its allegations of Count VIII the repeated contention

that the parties had an express oral contract, yet nowhere does Count VIII, either by itself or by

reference to a preceding paragraph, contain the allegation that the parties did not have a contract.

Thus, Count VIII, the claim for unjust enrichment, is legally insufficient to support relief in favor

of Coastal.

Even had Coastal validly pled a claim for unjust enrichment, it would still be subject to

20

dismissal, because the claim is wholly unfounded.  Although Coastal claims that Brunckhorst

benefitted from the termination of the contract in the form of the goodwill that Coastal had built

up for Boar's Head products over its twenty-three years as distributor, it cites no case law to

support its assertion that this can form the basis of recovery in quasi-contract.  Rather, such a

holding would abrogate the significance of at-will contractual arrangements.  Were this the law,

anytime a party to an at-will contract terminated the contract because of economic expediency, it

would be required to disgorge to the other party its gains, thus rendering the term "at-will"

completely meaningless.  Because this is not the law, and because Coastal has not even alleged

that there was no contract in existence at the time, Count VIII must be dismissed.

I. Recoupment

Similar to a claim for unjust enrichment, a claim for recoupment is an equitable claim

that seeks quasi-contractual relief.  Likewise, such a claim is invalid where an express contract

already governs the relationship of the parties.  See, e.g., Cromeens, Holloman, Silbert, Inc. v.

AB Volvo, 349 F.3d 376, 396-97 (7th Cir. 2003).  Because the Amended Counterclaim makes no

allegation that a contract did not exist between Coastal and Brunckhorst, its claim for

recoupment in Count IX must meet a similar fate as its claim for unjust enrichment in Count

VIII: dismissal.

Although Coastal again cites both Allied Equip. Co. v. Weber Eng'red Prods., Inc., 237

F.2d 879 (4th Cir. 1956), and Melchiorre v. California Canners & Growers, 394 F.2d 413 (4th

Cir. 1968), neither case provides support for Coastal's argument.  Rather, Allied, discussed supra

at Part IV.A., involved a letter that was provided to Allied in order to ensure that it would be able

to lease space necessary to set up a distribution network.  Allied, 237 F.2d at 881.  When the

relationship was terminated a year later by the manufacturer, the Fourth Circuit held that a jury question existed as to whether Allied had been given a reasonable period of time in which to recoup its investment.  In this case, Coastal had been distributing products for twenty-three years, more than a reasonable time to recoup any initial investment, and did not provide any written notices to anyone that would have supported further investment by Coastal in its business. Similarly, in Melchiorre, the issue addressed by the Fourth Circuit involved whether a contract existed, and if so, how much notice was required before it could be terminated.  Coastal here does not allege that it did not receive reasonable notice that Brunckhorst was terminating its agreement.  Accordingly, Melchiorre is inapposite and Count IX of the Amended Counterclaim must be dismissed.

V.  Conclusion

Because the claims brought in the Amended Counterclaim are legally insufficient, the court **GRANTS** Brunckhorst and Boar's Head's motions to dismiss and **DISMISSES** the Amended Counterclaim.  As a result, Brunckhorst's motion to drop parties added to the counterclaim, the motion for joinder filed by the Meyerses and Coastal Real Estate, and Brunckhorst's motion to strike exhibits to the Amended Counterclaim are **DENIED** as **MOOT**.

The Clerk is **REQUESTED** to send a copy of this Order to the counsel of record for all parties.

It is so **ORDERED**.

/s/

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

January 29, 2008
Norfolk, Virginia

22